IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PATRICIA YOST, an individual, on behalf of herself and all others similarly situated<br><br>*Plaintiff*,<br><br>v.<br><br>ELON PROPERTY MANAGEMENT COMPANY-LEXFORD POOLS 1/3, LLC, a Delaware limited liability company, and ELON PROPERTY MANAGEMENT, LLC, a Delaware limited liability company, doing business together as "Elon Property Management," and REAL PAY, INC., and Illinois corporation<br><br>*Defendants*. | Civil Action No. ELH-21-1520 |

**MEMORANDUM OPINION**

This Memorandum Opinion concerns final approval of an unopposed settlement agreement in a class action suit initiated by named plaintiff Patricia Yost.

Plaintiff filed a Complaint against defendants Elon Property Management Company-Lexford Pools 1/3, LLC and Elon Property Management, LLC (collectively, "Elon") on June 18, 2021, seeking class-wide relief, *inter alia*, for violation of 15 U.S.C. § 1679 *et seq*., commonly known as the "Federal Credit Repair Organizations Act" ("CROA" or the "Act"). The suit concerns credit amelioration fees charged to Elon tenants as part of their rent payments. ECF 1; ECF 44 at 1-2. Plaintiff subsequently filed an Amended Complaint (ECF 20), adding Real Pay, Inc. ("Real Pay"), Elon's "business partner," as a defendant. ECF 34 at 4; *see also* ECF 20, ¶ 21. However, Real Pay was never served. *See* Docket.

On July 5, 2022, plaintiff filed an "Unopposed Motion for Preliminary Approval of Class Action Settlement" (ECF 34, the "Motion"), seeking, *inter alia*, preliminary certification and approval of the proposed class action settlement. By Order of July 11, 2022 (ECF 36), Judge Catherine C. Blake, to whom the case was then assigned,[1] granted preliminary approval of the proposed settlement and directed notice to be issued to the class members. That Order was subsequently amended by Order of July 29, 2022 (ECF 40), providing for short form class notice and enlargement of time to complete notice mail-out. In addition, a class action fairness hearing was scheduled for January 13, 2023. ECF 43.

Now pending is the "Motion for Final Approval of Class Action Settlement Agreement." ECF 44 (the "Motion"). With the Motion, the parties submitted a "Declaration of Noah Fiori, Case Manager, American Legal Claim Services, LLC," with exhibits, including a list of class members who timely opted out of the proposed settlement (ECF 44-1); a "Declaration of Jane Santoni," Class Counsel (ECF 44-2); and a "Declaration of Robert W. Murphy," who is also Class Counsel. ECF 44-3.

Also pending is the "Motion for Award of Attorneys' Fees and Costs and Approval of Class Representative Service Award." ECF 45 (the "Fee Motion").

No objections were lodged to the motions. And, the class action fairness hearing was held on January 13, 2023, as scheduled. Ms. Yost was present. But, as the record reflects, no interested parties or members of the public appeared at the hearing.

---

[1] The case was reassigned to me on December 7, 2022. *See* Docket.

**I. Factual and Procedural Background**

Plaintiff alleges that it was the policy and practice of defendants to "provide credit repair services subject to CROA without providing the written disclosures mandated by 15 U.S.C. § 1679c before collecting monies for credit repair services," and to "have consumers enter into contracts for credit repair services without the mandated contract terms and provisions required under 15 U.S.C. § 1679d and e". ECF 20, ¶¶ 29, 30. Further, defendants allegedly made "false statements with respect to a tradeline to a consumer reporting agency in contravention of 15 U.S.C. § 1679b(a)(1)(A). *Id.* ¶ 31. Both the initial Complaint (ECF 1) and the Amended Complaint (ECF 20) contain three counts: violation of the Act (Count 1); declaratory and injunctive relief (Count 2); and unjust enrichment (Count 3).

In response to the initial Complaint (ECF 1), defendants filed a motion to dismiss. ECF 10. They argued, *inter alia*, that Elon is not a credit repair organization subject to the CROA. ECF 10. Plaintiff learned that Elon's business partner, Real Pay, was also reporting false information on plaintiff's credit reports. Therefore, Yost added Real Pay as a party defendant in the Amended Complaint. ECF 20. As noted, Real Party was never served with the suit.

Defendants moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 24. Plaintiff opposed the motion. ECF 25. And, defendants replied. ECF 26. After the briefing, counsel began several weeks of discussions concerning the settlement of the dispute on a class-wide basis. ECF 35 at 5.

On February 22, 2022, the parties asked the Court to stay the case to afford counsel an opportunity to present a proposed class settlement agreement for court approval. ECF 27. That request was granted. ECF 28.

Then, on May 9, 2022, plaintiff filed an "Unopposed Motion for Preliminary Approval of Class Action Settlement." The Settlement Agreement is docketed at 34-1 ("Agreement").[2] Judge Blake granted preliminary approval of the Agreement on July 11, 2022. ECF 36. Thereafter, on July 25, 2022, the parties filed a "Joint Motion to Modify Preliminary Approval Order to Provide for Short Form Class Notice and Enlargement of Time to Complete Notice Mail-Out." ECF 38. By Order of July 29, 2022 (ECF 40), the Court found that the use of the short form notice would benefit class members by reducing administration expenses and that it complies with the requirements of Fed. R. Civ. P. Rule 23 and due process. Thus, Judge Blake granted the motion. In consideration of the preliminary approval of a settlement in the case, the pending motion to dismiss (ECF 24) was denied, without prejudice. ECF 41.

On September 20, 2022, the parties filed a "Joint Motion to Direct Notice to Joint Class Members and to Reset Settlement Administration Deadlines." ECF 42. That motion was granted, and the class action fairness hearing was set for 9:30 a.m. on January 13, 2023. ECF 43. The fairness hearing was held, as scheduled. ECF 50.

## II. The Settlement Agreement

The Settlement Agreement (ECF 34-1) defines the "Settlement Class" as "[a]ll persons in the United States who, in the four (4) years preceding the filing of the instant Action, were Elon's tenants and paid Rental Payment Reporting Fees directly to Elon on their own behalf." *Id.* at 4. Therefore, the Class pertains to persons who were tenants from June 18, 2017, to June 18, 2021.

Under the Settlement Agreement, defendants will pay a total of $500,000.00 ("Settlement Fund"). *Id.* at 9. This represents the aggregate of "Rent Credit to Current Tenant Class Members" (as defined in ECF 34-1 § 2.2.2.1); the "Settlement Checks to Former and Post-Approval Former

---

[2] Real Party is not a party to the Settlement Agreement.

Tenants" (*id*. § 2.2.2.2.1); the "Class Representative Service Award" (*id*. § 10); the "Attorney's Fees and Expense Award" (*id*. § 11); and the "Settlement Administration Fee." *Id*. To the extent that any funds remain, funds shall revert to Elon via check delivered to Elon by the American Legal Claim Services, LLC ("Settlement Administrator"). *Id*. § 2.2.2.2.3. Significantly, Elon has agreed to cease the practice of collecting fees from tenants with respect to rental payment reporting. ECF 34-1, § 2.1.

Pursuant to the Preliminary Approval Order (ECF 36), as subsequently amended on July 29, 2022 (ECF 40), the Court approved the form of the notices to the Settlement Class and further directed the Settlement Administrator to mail notices by first class mail to class members at their last known address.

On July 21, 2022, the Settlement Administrator received the mailing list ("Class List") from counsel for the defendants containing 22,046 records with street addresses, and the subclass of each class member: current tenant or former tenant. ECF 44-1, ¶ 3. A total of 320 duplicates were identified and, after the duplicates were removed, the final Class List contained 21,726 class members. *Id*. On August 12, 2022, the Settlement Administrator mailed the postcard notice (*id*. at 5-6), substantially in the form approved by the Court, to 21,726 class members. *Id*. ¶ 4.

The Settlement Administrator received an additional mailing list on September 29, 2022, consisting of 6,005 records with the names, addresses, and co-obligor identifiers of a subclass of joint class members. *Id*. ¶ 5. An updated postcard notice (*id*. at 8-9) was mailed to each joint class member. *Id*. Of the total 27,731 notices mailed, 4,122 were retuned by the United States Postal Service ("USPS"). *Id*. ¶ 6. The Settlement Administrator remailed 3,567 notices to updated addresses, of which 603 were returned by the USPS as of December 26, 2022. *Id*. Accordingly,

a total of 26,573 notices, or 95.82% of notices mailed, were deemed delivered. ECF 44-1, ¶ 7.[3]

The Settlement Administrator provided a website that enabled members to update their address, download an opt-out form, and view other relevant documents. *Id.* ¶ 8. The Settlement Administrator also established a telephone interactive voice response line for members to contact with questions about the settlement and to update their address. *Id.* ¶ 9.

As of December 26, 2022, the Settlement Administrator received 40 timely requests for exclusion. *Id.* ¶ 10.[4] Notably, however, no objections to the settlement were received. *Id.* ¶ 11.

### III. Fed. R. Civ. P. 23

#### A. Generally

Fed. R. Civ. P. 23 is titled "Class Actions." Under Rule 23(e), a class action lawsuit may be settled, voluntarily dismissed, or compromised only with the express approval of the court. Several procedures apply, including (1) requisite notice of the settlement to the plaintiff class; (2) the court must hold a hearing and determine that the settlement is "fair, reasonable, and adequate"; (3) the parties must file a statement identifying any settlement agreement; (4) the court must provide an opportunity to be excluded; and (5) any objections of the plaintiff class to the settlement must be considered by the court and the parties. *See* Rule 23(e)(1) – (5).

---

[3] Rule 23 does not require the parties to exhaust every conceivable method of identifying and providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985). As detailed in the Motion, ECF 44 at 9, the Settlement Administrator followed its standard practice of processing the Class List through NCOA Services and skip tracing to obtain the best possible addresses for the Class Members.

[4] The Class Administrator received a total of 49 requests for exclusion. Of these requests, eight were determined to be duplicative and one was received after the deadline. ECF 44-1, ¶ 10.

Rule 23(e)(1) requires notice to be provided in a "reasonable manner" to all class members. The parties must also provide a statement identifying the agreement. Rule 23(e)(3). And, an opportunity must be afforded to class members to object. Rule 23(e)(5).

In this case, notice was provided to the class in a reasonable manner. As indicated, the Settlement Administrator mailed the Court-approved notices to 27,731 class members. ECF 44-1, ¶ 7. Of those, 1,158 notices, or 4.18%, were deemed undeliverable. *Id.*

In addition, the parties provided a statement identifying the Settlement Agreement, which was filed on the public docket on May 9, 2022. ECF 34-1. Class members were also provided with a statement detailing the terms of the Settlement Agreement. *See* ECF 44-1 at 5-6, 8-9.

And, a reasonable opportunity was afforded to class members to object or opt-out of the settlement, and members were informed of their rights in writing. Notably, no objections were filed, but several individuals elected to opt out. *See id.* ¶¶ 10, 11.

### B. Fairness and Adequacy of the Settlement

"The purpose of Rule 23(e) is to protect the unnamed members of the class. Under Rule 23(e), a district court acts as a fiduciary, guarding the claims and rights of the absent class members." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) (internal citation omitted). In evaluating whether a settlement is fair, reasonable, and adequate, the trial court is entitled to consider the judgment of experienced counsel for the parties. *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Pursuant to Fed. R. Civ. P. 23(e)(2), a court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate."

Rule 23(e)(2) sets forth factors for the district court to assess in evaluating fairness, reasonableness, and adequacy. They are as follows:

>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;
>>
>> (C) the relief provided for the class is adequate, taking into account:
>>
>>> (i) the costs, risks, and delay of trial and appeal;
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D) the proposal treats class members equitably relative to each other.

The Fourth Circuit has acknowledged that "because [its] factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors, the outcome[s] [are] the same under both [its] factors and the Rule's factors." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020).

According to the Fourth Circuit, a settlement is considered fair if it "was reached as a result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991); *see* Rule 23(e)(2)(B). To evaluate the fairness of a settlement, a court also considers, *inter alia*: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *In re Lumber Liquidators*, 952 F.3d at 484 (citing *In re Jiffy Lube*, 927 F.2d at 159).

Moreover, in determining whether the settlement is adequate, a court should consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and

the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Lumber Liquidators*, 952 F.3d at 484 (citing *In re Jiffy Lube*, 927 F.2d at 159).

In this case, plaintiff "believes the claims of the Class are meritorious, [but] the Class Representative recognizes that ultimate success on the merits is by no means assured. During the initial part of this litigation, Defendants had made clear that if this matter were contested, they would vigorously challenge the merits of the claims of the Class Representative. Defendants have also contended and continue to contend that they have meritorious defenses to the asserted claims . . . ." ECF 44 at 12.

In the year and a half since this class action was initiated, the parties conducted due diligence investigation, including the exchange of information relative to class claims. Further, the issues disputed in this suit appear to be fact intensive and involve complex statutory schemes. As noted, Elon filed a comprehensive motion to dismiss (ECF 24), raising legal and factual challenges to plaintiff's allegations. After full briefing from the parties (ECF 25; ECF 26), the case was stayed so that the parties could engage in settlement discussions. ECF 28.

The parties entered into settlement negotiations in the Spring of 2022. Elon exchanged information with class counsel pertinent to certification, including disclosures concerning class size, scope, and damages. Through this process, class counsel acquired knowledge and information to assess the merits of the claims, potential defenses, and potential settlement.

After disclosure of the information pertaining to certification, the parties submitted the Settlement Agreement on May 9, 2022. ECF 34-1. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the agreement over the next several weeks. *See, e.g.*, ECF 38; ECF 42.

By reaching the proposed settlement, the parties have dispensed with the need for protracted litigation. To be sure, were this case to proceed without settlement, litigation would have continued. Litigation is both costly and time consuming. And, there is no certainty as to the outcome.

The amount of the settlement appears appropriate in light of the probability of success on the merits and the potential recovery. In this regard, according to the parties, the proposed benefit to the Class is in the range of settlements obtained in other class actions similar to the instant proceeding. *See*, *e.g.*, *Hillis v. Equifax Consumer Services*, TCB-104-3400, TCB-107-314, 2007 WL 1953464 (N.D. Ga. June 12, 2007) (credit monitoring services having retail value between $24 to $48); *Browning v. Yahoo!, Inc.*, HRL-C04-01463, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) (two months of credit monitoring worth $9.95 a month).

Indeed, modest payments to class members are not uncommon in consumer class actions. *See*, *e.g.*, *Garza v. Mitchell Rubenstein & Associates, P.C.*, GJH-15-1572, 2015 WL 9594286 (D. Md. Dec. 28, 2015) (preliminary approval of $12.50 per class member); *Orloff v. Syndicated Office Systems*, 00-5355, 2004 WL 870691 (E.D. Pa. 2004) (forgiveness of 10% of debt of class members resulting in $131 economic benefit to each class member).

Furthermore, plaintiff's counsel has represented that they are experienced in handling CROA collective action litigation. Notably, plaintiff's counsel avers that they have been appointed class counsel in well over one hundred class actions in state and federal courts. ECF 44-3, ¶ 22. Moreover, the proposed settlement relief for class members is substantial and within the range of similar CROA class settlements. *Id*. ¶ 8. Finally, there is no evidence of bad faith or collusion, and no party has complained of the manner in which plaintiff's counsel handled this case.

Accordingly, having reviewed the Motion, the Settlement Agreement, the affidavits of class counsel, and all documents filed in connection with the proposed settlement, I am persuaded that the requirements of Fed R. Civ. P. 23(e) are satisfied in this case.

### C.  Certification of the Class

Federal Rule 23(a) sets forth four prerequisites for a class action to be certified: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class; (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the four prerequisites set out in Rule 23(a), the requirements of one of three subsections of Rule 23(b) must also be satisfied. Plaintiffs seek certification pursuant to Rule 23(b)(3), requiring them to demonstrate that common questions of law or fact predominate over questions affecting only individual members and that a class action is the superior method for the fair and efficient handling of the claim. Fed. R. Civ. P. 23(b)(3)(A)-(D).  These criteria are referred to as predominance and superiority, discussed *infra*.

The numerosity prerequisite is satisfied if joinder of all putative class members would prove to be "impracticable." Fed. R. Civ. P. 23(a)(1).  Courts in this District have previously noted that, generally speaking, "courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998).  In fact, "'[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical.'" *Baehr, et al. v. Creig Northrop Team, P.C.*,. WDQ–13–0933, 2014 WL 346635, at * 8 (D. Md. Jan. 29, 2014) (quoting *Dameron v. Sinai Hosp. of Balt., Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984)).  In the Settlement Agreement, the parties stipulated to a

class of about 22,296 current and former tenants. ECF 44 at 4. The size of the class easily satisfies the numerosity requirement.

Commonality requires that there are question of law or fact common to the class. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006). "A common question is one that can be resolved for each class member in a single hearing." *Id.* On the other hand, a question is not common if its resolution "turns on consideration of the individual circumstances of each class member." *Id.* "The common questions must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).

All members of the class have common claims. They all relate to credit amelioration fees charged to Elon tenants as part of their rent payments. The common issues relating to defendants' alleged malfeasance with respect to these fees plainly predominate over the individual circumstances of each class member. And, plaintiff's interest in proving that defendants violated federal law is aligned with the interest of class members in proving the same.

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *George v. Duke Energy Retirement Cash Balance Plan*, 259 F.R.D. 225, 232 (D.S.C. 2009) (quoting *Lienhart*, 255 F.3d at 146). I am satisfied that the claims of the named plaintiff in this case are typical of the class.

Finally, the named plaintiff must be able to fairly and adequately protect the interests of the class members to satisfy the adequacy of representation requirement. *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 268-69 (D. Md. 2004). "The adequacy of representation requirement involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2)

whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *George*, 259 F.R.D. at 232.

Plaintiff does not have any interests that are contrary to the class. Rather, as noted, she shares the claims that are common to all class members.

Further, plaintiff's counsel is well-qualified for this litigation. They have represented class action plaintiffs in this District before and, in this case, have steered the class to a fair, reasonable, and adequate settlement.

In sum, Rule 23(a) is satisfied.

In addition to meeting all four requirements of Rule 23(a), a putative class must show that the class falls into one of the three categories for certification specified in Rule 23(b). Plaintiffs seek certification pursuant to Rule 23(b)(3). Under 23(b)(3), plaintiffs must demonstrate that the common questions of law or fact predominate over questions affecting only individual members and that a class action is the superior method for the fair and efficient handling of the claim. As noted, these criteria are referred to as predominance and superiority.

In this case, the only claims are claims of the class as a whole – all members allege that they were wrongfully charged credit amelioration fees as part of their rent payments to Elon. The question of the existence of this alleged malfeasance is a common question that predominates over any individual questions of each class member.

The class action also meets the superiority test. Class treatment is superior to other forms of adjudication because of the likelihood that Class Members would not otherwise be aware of their claims against defendant, the high cost for a party to litigate such a claim individually, relative to the potential damages and recovery, and the consistency of results.

In sum, Rule 23(b)(3) is also satisfied. Therefore, I will certify the proposed class, as I described earlier, and as it is described in the Settlement Agreement.

For these reasons, and because no objections have been made, I will grant the "Motion for Final Approval of Class Action Settlement Agreement." ECF 44.

### IV. Attorneys' Fees & Costs And Service Award to Plaintiff

I next consider the Fee Motion, which includes a request for a service award for the named plaintiff. ECF 45.

Class counsel has asked for approval of an award of attorneys' fees in the amount of $166,650.00, plus expenses in the amount of $750.00. *Id*. ¶ 7(b). The Settlement Fund is valued at $500,000.00. Thus, counsel's fee request of $166,650.00 is equal to 33% of the recovery. The request is uncontested by defendants. And, no class members have objected.

Federal Rule of Civil Procedure 23(h), which governs attorneys' fees in class actions, provides that a court may award "reasonable" attorneys' fees. A court bears the responsibility to determine that fees are reasonable, even in the absence of objections. *See* Fed. R. Civ. P. 23(h), 1993 Advisory Committee notes. As the Advisory Committee notes indicate, "[t]he agreement by a settling party not to oppose a fee application up to a certain amount . . . is worthy of consideration, but the court remains responsible to determine a reasonable fee." *Id.*

In a class action, "[t]here are two methods commonly used for calculating an attorney's fee award: the lodestar method and the 'percentage of recovery' method." *Decohen v. Abbasi,* LLC, 299 F.R.D. 469, 481 (D. Md. 2014) (footnote omitted). Courts have favored the percentage-of-recovery method when the efforts of a particular plaintiff and his or her attorney create, discover, or increase a fund to which others also have a claim. *See, e.g.*, *In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009) (endorsing percentage-of-recovery method to calculate attorney fee award out of

settlement fund in nationwide products liability class action); *see also* The Manual for Complex Litigation ¶ 14.231 (4th ed. 2011) ("reporting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage method in common-fund cases"). "The percentage of the recovery method involves an award based on a percentage of the class recovery, set by the weighing of a number of factors by the court." *Whitaker v. Navy Fed. Credit Union*, RDB-09-2288, 2010 WL 3928616, at *4 (D. Md. Oct. 4, 2010).

However, the lodestar method is also commonly used to calculate reasonableness. *See, e.g.*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("encourag[ing] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage"). The lodestar method determines the appropriate fee award by multiplying the reasonable hourly rate by the number of hours reasonably expended. *McAfee v. Boczar,* 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014); *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008). There is "a strong presumption that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88-89) (internal quotation marks omitted).

Courts in this Circuit generally use a percentage of recovery method and supplement it with the lodestar method as a cross-check. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 679 (D. Md. 2013). Moreover, the Committee Notes to Rule 23(h) indicate that a court may evaluate whether a fee award in a "common fund" case, such as this one, is reasonable based on either a percentage-of-recovery method or the lodestar method. *See* Fed. R. Civ. P. 23(h), 1993 Advisory Committee notes.

When using the percentage of recovery method, district courts in this Circuit have analyzed the following seven factors: (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the

class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy. *Singleton*, 976 F. Supp. 2d at 684; *see, e.g., Kelly v. Johns Hopkins Univ.,* GLR-16-2835, 2020 WL 434473, at *2 (D. Md. Jan. 28, 2020); *Fangman v. Genuine Title, LLC*, RDB-14-0081, 2017 WL 86010, at *4 (D. Md. Jan. 10, 2017).

In the Fee Motion, class counsel has represented that the fee is not based on an hourly rate, but rather on a contingency fee arrangement. ECF 45 at 9. As a result, class counsel would only receive payment for their efforts in this matter if they obtained a recovery for plaintiff and the class. Of note, class counsel has not received any payment for their work in this case to date. That the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fee award, because [s]uch a large investment of money [and time] place[s] incredible burdens upon. . . law practices and should be appropriately considered." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *accord Been v. O.K. Indus., Inc.*, No. 02-285, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

In light of the complexity of the case, the risk undertaken by counsel that plaintiff would not prevail, and in view of the various factors considered with respect to the reasonableness of the settlement, such as time devoted to investigating the case, litigating, and settling, and the quality and skill of the attorneys involved, a fee equal to 33% of the recovery appears to be a reasonable percentage of the recovery in this case.

The lodestar calculation can be used to confirm the reasonableness of this award. As noted, the lodestar method determines the appropriate fee award by multiplying the reasonable hourly rate by the number of hours reasonably expended. *McAfee,* 738 F.3d at 88; *Grissom,* 549 F.3d at 320.

Class counsel Jane Santoni, of the law firm Santoni, Vocci & Ortega, LLC, and Robert W. Murphy, of the Law Office of Robert W. Murphy, have each submitted affidavits documenting their respective fees and expenses. Ms. Santoni has been licensed to practice law since 1986. ECF 44-2, ¶ 3. She has indicated that the lodestar calculation for her attorney's fees for the time expended or to be expended is $21,682.50, based on 41.3 hours at the rate of $525 per hour. *Id.* ¶ 24. Mr. Murphy was initially admitted to the Bar in Florida in 1987. ECF 44-3, ¶ 8. His lodestar calculations are valued at $82,800, based on 144 hours of work at the rate of $575 per hour. *Id.* ¶ 30.

The hourly rates used by Santoni and Murphy exceed the high end of the reasonable rates for attorneys with similar experiences, as set forth in Appendix B of the Court's Local Rules. In particular, Appendix B provides that for lawyers admitted to the bar for 20 years or more, the fee range is $300 to $475 per hour. Even allowing for the excessive rate, the total lodestar value equals $104,482.50, which is $62,167.50 less than counsel's contingency fee request of $166,650.00.

Given the significant discrepancy between the proposed fee based on the percentage of recovery method and the lodestar calculation, the Court wrote to counsel by letter dated January 9, 2023 (ECF 47), asking Class Counsel to amplify the justification for the attorneys' fee request. Class Counsel responded on January 10, 2023. ECF 49. Counsel explained, *inter alia*, that the lodestar cross-check calculation should include a multiplier. *Id.* at 2.

In doing cross-checks, courts in this Circuit have approved lodestar multipliers. *See Kelly v. Johns Hopkins University*, GLR-16-2835, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020) ("The requested fee would result in a lodestar multiplier of 2.45—well within the range routinely approved in this Circuit."); *Edward J. v. Genuine Title*, RDB-14-0081, 2017 WL 3434109, at *7 (D. Md. Aug. 10, 2017) (stating that "this Court has previously held that 'lodestar multipliers

falling between 2 and 4.5 demonstrate a reasonable attorneys' fee'"); *Jones v. Dominion Resources Services, Inc.*, 601 F. Supp. 2d 756, 766 (S.D. W.Va. 2009) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."); *Kruger v. Novant Health*, WLO-14-208, 2016 WL 6769066, at *5 (M.D. N.C. Sept. 29, 2016) (collecting cases reflecting lodestar multipliers of 2.5 to 8.9).

When using the median hourly rate for lawyers admitted to the bar for 20 years or more, the fee request of $166,650.00 results in a multiplier of 2.3 on the lodestar calculation for Class Counsel. This is at the low end of multipliers used in the cross-check analysis.

The work performed by plaintiff's counsel included the initial investigation and development of the case; filing of the Complaint; engaging in settlement negotiations; and motions practice. Additional time was devoted to preparing settlement documentation and paperwork for class notification. And, the legal and factual issues posed by this case were complex. Moreover, the Court is mindful that Class Counsel assumed all of the risk in pursuing this case, as reflected in the contingency fee agreement. Therefore, in my view, counsel's requested fee award is reasonable.

Finally, plaintiff seeks a service award of $5,000.00, to be paid by defendants from the Settlement Fund, in addition to the other settlement benefits. ECF 45. There has been no opposition to plaintiff's request.

The proposed service award for the plaintiff represents 1% of the Settlement Fund. Plaintiff cooperated with class counsel and expended effort to see this case through to settlement, which required her to participate in the pre-suit investigation; provide detailed information concerning her tenant-landlord relationship with Elon; and be ready, willing, and able to appear at trial, if necessary.

Incentive payments or service awards have been regularly allowed in class action cases. *See, e.g., In re Tyson Foods, Inc.*, RDB–08–1982, 2010 WL 1924012, at *4 (D. Md. May 11, 2010); *see also Perry v. FleetBoston Financial Corp.*, 2005 WL 1527694 (E.D. Pa. June 28, 2005) (awarding $5000 each to three class representatives); *Bonett v. Educ. Debt Services, Inc. et al.*, Civ. No. 01-6528, 2003 WL 21658267, *7 (E.D. Pa. May 9, 2003) (granting named plaintiff a $4,000 incentive award). And, judges of this Court have approved comparable awards. *See*, *e.g.*, *Erny v. Mukunda*, DKC-18-3698 (awarding $1,000 service awards to named plaintiffs); *Hauk v. LVNV Funding, LLC.,* CCB-09-003238 (awarding $4,000 in incentive payments to plaintiffs); *Miller v. Prestige Financial*, Case BEL-09-1671 (awarding a $6,000 incentive award to each representative plaintiff); *Muga v. BB & T*, WDQ-10-00890 (awarding a $7,500 incentive payment); *Castillo v. Nagle & Zaller, P.C.,* WDQ-12-002338 (awarding $3,500 to the representative plaintiff); *see also Gray v. Fountainhead Title*, WMN 03-01675; *Naughton v. Millennium Escrow and Title*, WMN 02-3238; *Clark v. Amerix Mortgage,* WMN 02-cv-2078.

Accordingly, I will grant the Fee Motion for attorneys' fees in the amount of $166,650.00 and expenses in the amount of $750.00, and for a service award of $5,000.00 to Patricia Yost.

An Order follows.

Date: January 13, 2023      /s/
                                                         Ellen L. Hollander
                                                         United States District Judge